## NELLIE BAILEY, Respondent, v. STIX, BAER & FULLER DRY GOODS COMPANY, Appellant.

**St. Louis Court of Appeals, June 14, 1910.**

1. **MASTER AND SERVANT: Duty of Master: Lighting Passageway and Stairs.** The duty of the master to furnish the servant a safe place to work extends to lighting passageways and stairs leading to and from the place of work.

2. ———: ———: ———: **Non-Delegable Duty.** The duty of the master as to lighting passageways and stairs to and from the place of work is personal and not delegable.

3. ———: **Injury to Servant: Negligence of Master Prerequisite to Recovery: Inferences.** In an action for personal injuries by a servant, while the law does not require positive and direct proof of the master's negligence, it is nevertheless essential for plaintiff's proof to indicate clearly that his injury resulted from some negligent act of the master; and if an inference of negligence is relied on, plaintiff is required to show that the injury is more naturally to be attributed to a cause which exists because of the master's negligence than to one which may exist without it, and if the inference is as consistent with the absence, as it is with the existence, of negligence for which the master is responsible, a recovery will not be allowed.

4. ———: ———: **Failure to Light Passageway and Stairs: Actual or Constructive Knowledge of Master Must be Shown.** In an action for injury to a servant, who, while going down stairs from her work, fell because of the darkness, plaintiff having shown that lights were burning on the stairway about an hour before she was injured, it devolved upon her to prove, either that defendant turned off the lights, or that they had been extinguished with its knowledge or for a sufficient length of time to charge it with constructive knowledge; and hence to merely show lights were not burning at the time of her injury was not sufficient to entitle her to recover.

5. ———: ———: ———: ———: **Sufficiency of Evidence.** In an action for injury to a servant, who, while going down stairs, fell by reason of the fact no lights were burning there and in the passageway, where the evidence showed the lights were burning an hour before she fell and there was an absence of proof as to when they ceased to burn and no proof

that they were turned out, there was nothing from which an inference could arise that defendant neglected its duty after having either actual or constructive knowledge of the darkness, and a verdict on these facts, affirming that defendant turned off the lights, would be based on guesswork and conjecture, which is not permissible.

6. **TRIAL PRACTICE: Request for Peremptory Instruction: Subsequently Introducing Evidence.** By introducing evidence after the court refused to direct a verdict, defendant waived his right to insist upon the insufficiency of plaintiff's case alone, provided he aided it by the evidence he introduced.

7. **MASTER AND SERVANT: Fellow-Servant: Night Watchman and Clerk.** A night watchman, charged with the duty of turning off and on lights in a store, which pertains to the master's duty of furnishing a safe place, is not a fellow-servant of a clerk in the store.

8. **————: Injury to Servant: Failure to Light Passageway and Stairs: Evidence: Inferences.** In an action for injury to a servant, who, while going down stairs, fell by reason of the fact that the lights were not burning there and in the passageway, evidence that the watchman, whose duty it was to turn out lights, was on the floor on which plaintiff's injuries were received about the hour at which they were received does not afford an inference that he turned off the lights, there being no evidence he was at or about the switch and nothing to indicate what he did while on that floor.

9. **————: ————: ————: ————: ————.** In such an action, where it appears an interval had elapsed between the time the watchman was on the floor and the time of plaintiff's injury and there was no evidence to show that darkness prevailed while he was on the floor, the evidence was insufficient to warrant an inference he knew the lights were out, and thus charge defendant through him with constructive knowledge of that fact.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED.

*Watts, Williams & Dines* and *William R. Gentry* for appellant.

(1) The court erred in overruling the defendant's demurrer to the evidence because there was no evidence

149 App—42

whatever of any notice, either actual or constructive, to the master informing the master of the darkness of the stairway. Wojtylak v. Coal Co., 188 Mo. 281; Kelley v. Railroad, 105 Mo. App. 365; Krampe v. Brewing Assn., 59 Mo. App. 277; Pavey v. Railroad, 85 Mo. App. 218; Herbert v. Shoe Co., 90 Mo. App. 305; Mfg. Co. v. Woodson, 94 Ala. 147; Wilson v. Railroad, 85 Ala. 273; Railroad v. Holborn, 84 Ala. 133; Railroad v. Flannigan, 77 Ill. 365; Rolling Stock Co. v. Wier, 96 Ala. 396; Burke v. Rubber Co., 21 R. I. 466. This same rule applies to failure to have place lighted. Dorney v. O'Neill, 34 App. Div. (N. Y.) 497; Dene v. Printing Co., 181 Mass. 560; Collins v. Railroad, 30 Minn. 31. (2) The doctrine of *res ipsa loquitur* does not apply between master and servant. Beebe, admr., v. Transit Co., 206 Mo. 41. (3) Plaintiff did not prove that her injury resulted from a negligent act of defendant. It may have resulted from a cause for which the master would be liable or from one for which he would not be liable, therefore the demurrer to the evidence should have been sustained. Goransson v. Mfg. Co., 186 Mo. 300.

*A. R. Taylor* and *Howard Taylor* for respondent.

(1) As the only error alleged in this record either in the motion for a new trial or in appellant's brief is that the demurrer to the evidence on the whole case ought to have been sustained by the trial court, the only question before this court on the record is, was there any evidence before the jury from which a fair-minded person could draw the inference of negligence. If the evidence was such that a fair mind could draw the inference that the defendant was guilty of negligence causing the injury and the plaintiff was free of negligence, then the case was for the jury, and the verdict is conclusive of the facts found. This is a settled rule of decision in Missouri. Berry v. Railroad, 124 Mo.

245; Eckhard v. Transit Co., 190 Mo. 611; Powers v. Transit Co., 20 Mo. 280.   (2)   There was evidence in this case from which a fair inference could be drawn that the lights on the second floor of the building and upon the stairway had been turned out by the defendant's agent, the night watchman.   That they were out the plaintiff testified, and the jury believed her evidence and found to be the fact.   That no other person was authorized to turn on or control the lights at night, appears from the evidence of the defendant's superintendent.   Upon this evidence the natural inference would be that the night watchman turned off the light on the second floor and stairway, and the ominous failure of the defendant to any wise explain the fact, though its watchman, Bandman, was on the witness stand, is significant.   He testified that between 6 and 6:30 p. m. that evening he was on the second floor and saw a great many employees coming from the cloak room and other parts of the building, leaving for the night.   Where an appliance is found in a condition unusual or acts out of the usual order of its operation, it is a fair inference that it is want of care in its original construction or its present condition.   Blanton v. Dold, 109 Mo. 75; Turner v. Haar, 114 Mo. 347.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of defendant.   Plaintiff recovered and defendant appeals.

Defendant conducts a large department store in the city of St. Louis and it appears plaintiff was in its employ, having charge of the employees' wraps in the wrap room on the second floor of the store.   Upon concluding work on the day of her injury, plaintiff discovered some one had left a lady's hat and coat in the wrap room. It was her duty to turn those articles over to defendant's night watchman for safe keeping before quitting the store.   With this purpose in view, plaintiff took the hat

and coat mentioned, passed out of the wrap room, and through the passage way, about ninety feet in length, to a stair leading from the second to the first floor of the store, where the watchman was stationed at the time. Both the passageway and stair were unlighted. Because of this fact, plaintiff stumbled and fell down the stair. As a result of the fall, her arm was broken.

The evidence tends to prove that the passageway from the cloak room and the stairway as well had always theretofore been lighted by electricity. It appears the stair, instead of passing down straight, turned at right angles about one-half way between the second and the first floors. An arc light had theretofore been maintained near the ceiling of the second floor immediately adjacent to the stairway and a small electric light had been maintained adjacent to the wall at the turn in the stair. These two lights afforded abundant light in aid of those passing up or down the stairs.

Plaintiff says on the evening in question, though the lights were burning in the wrap room of which she had charge, they were not burning in the passageway nor at the stair when she passed from the wrap room to convey the articles mentioned to the watchman on the first floor. She says the passageway from the wrap room to the stair was unlighted and that she felt her way along the wall through the darkness for a distance of ninety feet to the stair; that upon approaching the stair, which was dark, as both the arc lamp above it and the smaller lamp at the turn beneath were unlighted, she was precipitated forward down the stairway to her injury while in the act of feeling for the first step with her right foot and with her hand against the wall. As to why the lights in the passage and stairway were not burning does not appear; that they had been burning an hour before that time is not questioned, for plaintiff herself testifies that at 5:30 o'clock she passed the same and the lights were aglow.

This was all the evidence introduced on the part of plaintiff and at its conclusion defendant requested the court to instruct a verdict for it on the theory that plaintiff had failed to show any breach of duty on its part. We believe this instruction should have been given for the reason that as it appears the lights were properly burning at 5:30 the mere fact they were not so burning at 6:30 is insufficient to afford the basis for a legitimate inference that defendant had breached its duty in the premises.

There can be no doubt that it was defendant's duty to exercise ordinary care to furnish plaintiff a reasonably safe place to work and this involves as well the exercise of ordinary care on its part to furnish a reasonably safe way of ingress and egress to and from the place of work. [Strobel v. Gerst Bros. Mfg. Co., 148 Mo. App. 22, 127 S. W. 421; Labatt on Master and Servant, sec. 100a]. When obstructions, stairways or pitfalls in the master's building are to be encountered in passing to and from the place of work, the same principle, of course, devolves upon the master the duty to exercise ordinary care to the end of sufficiently lighting the way of ingress and egress for the purpose of enabling the servant to enjoy a reasonable degree of safety while passing to and from the place of work. It is entirely clear that it was defendant's duty to exercise ordinary care toward maintaining lights at the stairway until the plaintiff and other employees had quit the service for the day. [Labatt on Master and Servant, sec. 105; Dorney v. O'Neill, 34 N. Y. App. Div. 497.] And, indeed, such is a personal duty of the master which he may not escape by delegating it to another, for it pertains to his obligation in respect of a safe place. [Labatt on Master and Servant, secs. 540, 541; English v. Roberts, Johnson & Rand Shoe Co., 145 Mo. App. 439, 122 S. W. 747.] If it appeared defendant had wholly omitted to supply any means of lighting the stairway and plaintiff came to her injury as a result of that fact,

there would be a clear case of neglect of duty on the part of defendant. But plaintiff's evidence disclosed that an abundant lighting apparatus had been installed and there had been sufficient light at all times even up to 5:30 o'clock, or about one hour before her injury. Plaintiff, having shown the passage and stairway to be sufficiently lighted at 5:30 o'clock, it devolved upon her to show either that defendant had turned off the lights or that they had been extinguished from some other cause with its knowledge or for a sufficient length of time to charge it with constructive knowledge before she was entitled to recover. By showing the mere fact that darkness prevailed in the stairway at 6:30 o'clock, plaintiff wholly failed to sustain the burden which the law casts upon her to disclose a breach of duty on the part of defendant operating proximately to her injury.

It is very true that the law does not require positive and direct proof as to the fact of negligence but it is nevertheless essential for plaintiff by her proof to indicate clearly that her injury resulted from some negligent act on the part of the master. [Labatt on Master and Servant, secs. 835, 836.] It is true the law is satisfied in this respect when the proof made furnishes a reasonable inference of negligence on the part of defendant. But if an inference of negligence is relied upon, as in this case, plaintiff is required to show that the injury is more naturally to be attributed to a cause which exists because of defendant's negligence than to one which may exist without it. [Labatt on Master and Servant, sec. 836.] In this respect, plaintiff's evidence falls short of affording the inference essential, for it no more points the fact that defendant turned off the lights or caused such to be done than it points they were extinguished from some cause without its knowledge or consent.

As before stated, defendant can be liable to respond for plaintiff's hurt on either of two hypotheses of negligence only: First, on its appearing that defendant turn-

ed off the lights or caused them to be extinguished and thus rendered the passage and stairway dangerous when, by exercising ordinary care, it might have known plaintiff would be required to pass that way; or, second, by showing the lights had been extinguished from some other cause and defendant either knew such fact, or the darkness had prevailed for such length of time that by exercising ordinary care defendant might have discovered it in time to have reinstated the light for her safety, for if the lights were extinguished by a sudden breakage of machinery, the interruption of the electric current or the intrusion of some third party by turning the switch, defendant could not be charged with negligence in respect of that matter until it had learned of the darkness or the darkness had existed a sufficient length of time to charge it with constructive notice. Though the mere fact darkness prevailed in the stairway affords a more reasonable inference that defendant turned off the lights than it does that they were extinguished from some cause over which it had no control and of which it had neither actual nor constructive notice for a sufficient length of time to reinstate them, it affords no inference whatever that defendant neglected its duty if the darkness prevailed because of the latter reason suggested. It is the rule in every case where an inference of negligence is relied upon for a recovery that if such inference is as consistent with the absence of negligence as it is with the existence of negligence for which defendant is responsible, no recovery may be allowed, for in those circumstances it devolves on plaintiff to show enough to exclude the idea that the injury may have resulted from the cause for which defendant is not liable and afford a reasonable inference identifying it with the negligence for which defendant is liable as its proximate cause. [Labatt on Master and Servant, sec. 836; Goransson v. Riter, etc., Mfg. Co., 186 Mo. 300, 307, 85 S. W. 338; Epperson v. Tel. Co., 155 Mo. 346, 382, 383, 55 S. W. 1050; Wood on Master and Servant (2 Ed.), sec. 382.]

Indeed, the law affords a presumption in favor of the master's innocence to the effect that until the contrary appears he will be deemed to have exercised ordinary care in discharging his duty. It is therefore the duty of plaintiff to overcome this presumption by showing sufficient to afford an inference not only that defendant turned out the lights, but that if they were extinguished from some other cause it had notice of the fact, either actual or constructive, for a sufficient length of time to relight them and was derelict in respect of its duty to so do. [Wood on Master and Servant, sec. 382; Dorney v. O'Neill, 34 N. Y. App. Div. 497.] It therefore appears that for the jury to find negligence on the part of defendant from this evidence alone it was necessary to resort to guesswork and conjecture, as between the two possible causes of the darkness, and affirm that defendant turned off the lights, for if they were extinguished by some other cause defendant was not responsible unless it neglected its duty to relight them after having either actual or constructive notice of the fact. Resort to such guesswork and conjecture is not permissible. [Labatt on Master and Servant, sec. 837; Goransson v. Riter, etc., Mfg. Co., 186 Mo. 300, 307, 85 S. W. 338.]

The lights were aglow at 5:30 o'clock and not a word in plaintiff's proof indicates what caused them to cease to burn nor how long the condition of darkness prevailed. For turning off the lights itself, defendant would be liable, irrespective of the question of notice, because, in so doing, it breached its positive duty to exercise ordinary care for plaintiff's safety; not so, however, if they were extinguished by a cause over which defendant had no control, for then its liability would depend entirely upon it appearing it had either actual or constructive notice of the interruption. In such circumstances, the breach of duty on defendant's part consists not solely in permitting it to be dark on the stairway but consists instead in permitting the darkness to

prevail after it had notice of the fact for a time reasonably sufficient to renew the light. As there is an absence of proof as to how long the lights had ceased to burn, there is naught from which an inference may arise to the effect that defendant neglected its duty after having either actual or constructive knowledge of the darkness.

But it is argued for plaintiff even though her evidence in chief is insufficient to support the verdict the case is aided by that introduced for defendant. Defendant, having introduced proof after the court refused to direct a verdict for it, thereby waived its right to insist upon the insufficiency of plaintiff's case alone, provided it aided the matter by giving proof of essential facts for her on its part. It will therefore be essential to examine such portions of defendant's evidence as are invoked by plaintiff. [Klockenbrink v. St. Louis & M. R. R. Co., 172 Mo. 678, 72 S. W. 900.] On behalf of defendant its superintendent testified that the night watchman had full charge of turning the electric lights on and off after about 6:00 o'clock in the evening and further that there were several switches on the second floor by which the lights in question could be turned on and off. The night watchman testified for defendant that he was on the second floor about 6:30 and passed from there downstairs to one of the exits of the store on the first floor where he stood at the time plaintiff received her injury. There can be no doubt that plaintiff and defendant's night watchman were not fellow-servants. This is especially true in view of the fact the watchman was charged with the duty of turning on and off the lights, for, this matter, pertaining as it does to a reasonably safe place, is a non-delegable duty which the law enjoins upon the master and for the breach of which he may not escape by giving its performance into the hands of an employee. [English v. Roberts, Johnson & Rand Shoe Co., 145 Mo. App. 439, 122 S. W. 747.] From the facts last stated and the proposition

of law thus asserted, it is argued, first, that the evidence affords a reasonable inference to the effect the watchman turned off the lights, and, second, that if he did not, he knew that some one else had done so and omitted to turn them on again, and with such knowledge took his leave from the second floor. The only fact pointed to as tending to prove the watchman turned off the lights himself is that he stated he was on the second floor about 6:30 o'clock but there is nothing to indicate what he did while on that floor nor does it appear that he was anywhere near the switchboard at which the lights could have been turned off. Indeed, it appears from the watchman's testimony the lights were burning while he was on the second floor, for he says that he saw many employees passing down from their work on the second to the first floor en route home. It is entirely clear the fact alone that the watchman was on the second floor at 6:30 o'clock wholly fails to afford an inference that he turned off the lights, sufficient to overcome and exclude the presumption of due care on the part of the master which attends the whole matter until it is shown the lights were out for a sufficient length of time to notify defendant of that fact and afford it an opportunity to relight. Especially is this true when nothing indicates that the watchman was near or about the switch.

But it is said if it may not be inferred from the fact the watchman was on the second floor at 6:30 o'clock that he turned off the lights in question it may be inferred he knew the darkness then prevailed there for the reason plaintiff testified it was about 6:30 when she was injured, and it is argued that notice to the watchman as to this matter was notice to the defendant for the reason the watchman is a vice principal in respect of this non-delegable duty of the master. The argument suggested requires further notice of the evidence. Plaintiff testified that her day's work concluded at 6:30 o'clock in the evening and it was immediately after concluding her labors she was injured because of the ab-

sence of light on the second floor and in the stairway. The watchman said he was on the second floor about 6:30 and continued by modifying the statement to the effect that he was there between 6:00 and 6:30 when he saw numerous employees passing downstairs. He explains, too, that at the time plaintiff was injured he had passed from the second floor to the first and was on watch at the exit of the store on Sixth street. He did not see her at all until after her fall down the stairs. It appears from this that an interval elapsed between the time the watchman was on the second floor (where, it is argued, he must have known the lights were out) and the time of plaintiff's injury, for then he was at his post of duty at the Sixth street entrance on the first floor. Upon considering this interval between the time the watchman was on the second floor and the time of plaintiff's injury when he was standing at the Sixth street entrance on the first floor, it is perfectly obvious there is no proof tending to show that darkness prevailed while the watchman was on the second floor. There can be no notice to the watchman of the fact of darkness on this score. Indeed, plaintiff does not say that the lights were out so long as a moment before she quit her work at 6:30 and at this time the watchman was standing at the Sixth street entrance on the first floor. There is nothing whatever in the case indicating the lights were out when the watchman was on the second floor. Indeed, besides the testimony of the watchman suggesting the contrary, that of every other witness in the case except plaintiff is to the effect the lights were all burning at the time she was injured and for a long time thereafter; numerous witnesses for defendant testified positively the lights were all aglow on the second floor through the passage and in the stairway, at the time plaintiff fell down the stairs. The proof is overwhelming to the effect plaintiff's injury was not the result of defective light; but the matter was for the jury and with this fact we are not concerned. Accepting the view of

the testimony most favorable to plaintiff, as we must, the most that can be said in her favor is that though it was dark at 6:30 when she passed down the stair, it was light a few moments before when the watchman passed the same way for the uncontroverted proof established an affluence of light immediately before plaintiff came on the scene from the wrap room.

There is naught in the case from which it may be inferred the watchman turned off the lights to the exclusion of the idea that they were off from some other cause and that defendant either knew or might have known the fact in time to have relighted them before plaintiff's injury. The judgment should be reversed. It is so ordered. All concur.